IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA SHIFT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No.: _____ |
| | ) |
| GWINNETT COUNTY, | ) |
| FULTON COUNTY, | ) |
| DEKALB COUNTY, and | ) |
| COBB COUNTY, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## **COMPLAINT**

### **THE NATURE OF THE CASE**

1.    "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  As the Supreme Court recognized in *Wesberry*, the right to vote and to have that vote counted is a fundamental constitutional right for all United States citizens. In Georgia, it is the county government that is responsible for ensuring that there are enough polling places, voting machines, and elections staff to run a proper election.

2. Each county has a Board of Elections charged with the responsibility of running the day-to-day operations of elections. But without being provided proper and sufficient polling places, voting machines and elections staff by the county Boards of Commissioners, the Boards of Elections are hamstrung in their ability to ensure that voters' sacred, constitutional right to vote is protected.

3. The county governments of Gwinnett, Fulton, DeKalb, and Cobb Counties – the four most populous counties in Georgia, with more than 2.2 million of Georgia's 6.6 million registered voters – have failed to provide the Boards of Elections enough polling places, voting machines, and elections staff in recent elections, resulting in voter disenfranchisement that undermines our democracy. Unpreparedness for elections even in the slightest sense (such as the failure to provide power cords to voting machines) can trigger four-hour long lines that result in an undue burden on the right to vote.  The counties have also failed to provide sufficient elections staff, which results in the delayed processing of registration forms preventing newly-registered voters from voting during the early voting period, and the delayed processing of absentee ballot applications and absentee ballots, resulting in outright disenfranchisement of absentee voters who did not receive their ballots in the mail until it was too late.

4.     Though the state bears its own responsibility for enacting and enforcing laws and policies that protect the fundamental right to vote, the widespread operational problems described above are directly traceable to the actions and inactions of the four counties. That is because under current Georgia law, each individual county government—run by their respective Boards of Commissioners—is responsible for providing the tools necessary for the Boards of Elections to do their job. The county governments have failed and have no plans to do so.

5.     The failure of Gwinnett County, Fulton County, DeKalb County, and Cobb County to provide the necessary tools for running an election is a failure of constitutional proportions. While the county governments have attempted to deflect criticism by blaming past problems on higher than expected voter turnout, the very term "high-turnout election" – those in which approximately 57% of registered voters attempt to cast a ballot – is a cynical misnomer.  Counties are constitutionally required to ensure that all elections do not result in widespread burdens on the right to vote, and should strive for turnout exceeding that of what the counties have labeled "high turnout elections" to be the norm.

## JURISDICTION AND VENUE

6.     This action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.     Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims arose in this district and division. All three defendants are located within this district and division.

## PARTIES

8.     Plaintiff Georgia Shift is a civic organization that gives marginalized young people, including young people of color, a seat at the table of democracy through electoral action, hands-on education, and civic media programs. Georgia Shift believes that the young generation is revolutionizing Georgia here and now, and it is committed to building a place where young people's lives are valued and their futures protected. On campuses and communities across the state, Georgia Shift organizes young people to build independent political power. In the most recent election, Georgia Shift was active in assisting voter registration and get out the vote efforts in Gwinnett County, Fulton County, DeKalb County, and Cobb County. Due to Defendants' recent failures, Georgia Shift must now divert resources towards ensuring that voters can actually cast a ballot and have it

counted, to compensate for Defendants' failures to provide enough resources to run a proper election. These resources are diverted away from activities that seek to increase voter turnout, towards ensuring that the current system can even handle the existing level of turnout.

9.      Defendants Gwinnett County, Fulton County, DeKalb County, and Cobb County are county governments. Each county is responsible for providing the necessary tools for the county Board of Elections to run state and federal elections in which citizens who are residents of the county and eligible voters may cast a ballot.

## FACTUAL ALLEGATIONS

10.     The November 2018 elections were plagued with problems that placed inexcusable and unjustifiable burdens on the right to vote, especially in Gwinnett, Fulton, DeKalb, and Cobb Counties.

11.     These problems included a lack of polling places, lack of sufficient voting machines, voting machine malfunctions, inadequate supplies of provisional ballots, inadequate amount of staff, all of which combined to result in unreasonably long lines on Election Day, with some lines up to four-hours long. Forcing voters to stand in lane for such extraordinary lengths of time results in disenfranchisement that is inexcusable.

12.     In addition, due to a shortage of staff, there were inordinate delays in the processing of registration forms, resulting in validly-registered voters not appearing on the rolls during the early voting period, and inordinate delays in the processing of absentee ballot applications or absentee ballots, resulting in absentee voters receiving their ballots too late to mail them in so that they arrive by Election Day.

13.     On election day, one organization alone received calls on its hotline or observed through its poll observers approximately 640 complaints from electors in Gwinnett County, 1432 complaints from those in Fulton County, 1159 complaints from those in DeKalb County, and 536 complaints from those in Cobb County, ranging from issues including, but not limited to, long lines, machine malfunctions, and other registration issues.

14.     County Boards of Elections and elections staff were constrained in their ability to address these problems due to the failure of each county, through their Boards of Commissioners, to provide them the tools that they needed to prevent these problems. More fundamentally, since the 2018 election, the defendant counties have failed to undertake meaningful efforts to improve the functions of the election system to ensure that these problems do not recur.

# CAUSE OF ACTION

*Violation of the Fourteenth Amendment's Protections Against Undue Burdens on the Right to Vote*

15.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

16.     The Fourteenth Amendment protects the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Pursuant to the *Anderson-Burdick* line of cases, the government cannot infringe upon the right to vote without adequate justification; the greater the magnitude of the infringement, the stronger the justification must be.

17.     Defendants' failure to provide their elections staff with the tools necessary to run an election resulted in extremely long lines on Election Day and failures to timely process registration forms, absentee ballot applications, and absentee ballots, resulting in unreasonable and severe burdens on the right to vote. There continues to be no indication thus far that the counties intend to resolve these problems, which will continue unless the court intervenes.

18.     These failures are not justified by any legitimate government interest.

19.     In light of the various violations described, Defendants have violated and continue to violate the Fourteenth Amendment's protections against undue burdens on the right to vote.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following:

a)  That this Court issue a judgment declaring that Defendants have violated the Fourteenth Amendment to the United States Constitution;

b)  That this Court direct Defendants to take all necessary actions in advance of the 2020 elections to protect voters by reforming and improving their election procedures to comply with the Fourteenth Amendment and applicable laws, including, but not limited to, publicly announcing the steps taken to provide sufficient  resources for the Boards of Elections to run a proper election in 2020 and beyond, any other such action that may be necessary to not burden voters and their right to vote;

c)  That this Court issue an injunction requiring Defendants to provide enough polling places, voting machines, and elections staff to prevent voters from having to wait in unreasonably long lines on Election Day, and that will allow elections officials to process all registration forms and absentee ballot applications within one day of receipt;

d)  That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988;

e)  That all costs of this action be taxed against Defendants; and

f)  That the Court award any additional or alternative relief as may be

deemed appropriate under the circumstances.

Respectfully submitted,

this March 11, 2019                    s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org

Sophia Lin Lakin*
Dale E. Ho*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7836 (phone)
slakin@aclu.org
dho@aclu.org
Attorneys for Plaintiffs

Neil A. Steiner*
Dechert LLP
Three Bryant Park,
1095 Avenue of the Americas
New York, NY 10036
212-698-3822 (phone)

9

neil.steiner@dechert.com

Angela M. Liu*
Dechert LLP
35 West Wacker Drive,
Suite 3400
Chicago, IL 60601
(312) 646-5816 (phone)
angela.liu@dechert.com

*Pro hac vice application forthcoming

Attorneys for Plaintiffs

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2019, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system. The Complaint will be served

on the above-named Defendants.

Date: March 11, 2019

s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org