IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA SHIFT, *et al.*,                  :
                                          :
        Plaintiffs,                       :
                                          :
    v.                                    :
                                          :
GWINNETT COUNTY, *et al.*,                :          CIVIL ACTION NO.
                                          :          1:19-cv-01135-AT
                                          :
        Defendants.                       :

## ORDER

This matter is before the Court on the Motions to Dismiss of Defendants Cobb County and Cobb County Board of Elections, Gwinnett County and Gwinnett County Board of Elections, Dekalb County and Dekalb County Board of Elections, and Fulton County and Fulton County Board of Elections [Docs. 66, 67, 68, 69] requesting dismissal of Plaintiffs' First Amended Complaint. The Court's ruling is set forth below.

## I.    FACTUAL BACKGROUND

On May 30, 2019, Plaintiffs Georgia Shift, Lynn Brindell, Velma Lambert, and Nyota Edjidjimo filed an Amended Complaint[1] for declaratory and injunctive relief (Doc. 57) against Defendants Gwinnett, Fulton, DeKalb, and Cobb Counties (collectively, "County Defendants") and Gwinnett County Board of Registrations

---

[1] Plaintiffs' Amended Complaint was filed in response to Defendants' motions to dismiss Plaintiffs' original Complaint, which was filed on March 11, 2019. As stated in the Court's November 25, 2019 Order, the Amended Complaint superseded the initial Complaint and is now the operative pleading in this case. (Doc. 88.)

and Elections, Fulton County Board of Registration and Elections, DeKalb County Board of Registrations and Elections and Cobb County Board of Elections and Registration (collectively, "BOE Defendants").

In their Amended Complaint, Plaintiffs allege that the County Defendants "failed [in the 2018 General Election] to provide their respective boards of elections enough polling places, voting machines, and elections staff, among other things, resulting in voter disenfranchisement that undermines our democracy." (Am. Compl. ¶ 3.)  The Plaintiffs allege that the BOE Defendants in turn failed to run "the day-to-day operations of elections . . . result[ing] in the oppression of voters' sacred, constitutional right to vote." (*Id.* ¶ 4). Plaintiffs charge that Defendants were collectively unprepared for the 2018 General Election, "trigger[ing] unreasonably long lines — taking voters four hours or more to cast a ballot — that result in an undue burden on the right to vote" and "outright disenfranchisement of absentee voters who did not receive their ballots in the mail until it was too late to vote." (*Id.* ¶¶ 5–6).

Plaintiffs allege that "widespread operational problems" including the failure to hire enough poll workers and administer adequate training, provide sufficient voting facilities and functioning equipment, and allocate enough funding for optimum voter turnout, are traceable to BOE Defendants, "responsible for running day-to-day operations of elections," and County Defendants, which are "ultimately responsible for approving and providing the resources . . . required to run and operate elections." (*Id.* ¶¶ 5–9, 18, 21–23).

According to Plaintiffs' allegations, "the Boards of Elections were fully aware of issues relating to inadequate training of poll workers and high turnout of voters, yet they "remained unprepared for the election and failed to administer the election properly." (*Id.* ¶ 10.)  Thus, they assert that the Court's intervention Court order "is necessary to ensure that the Counties and their Boards of Elections will voluntarily take corrective actions that they previously refused to take." (*Id.*)

Plaintiffs include Georgia Shift – a civic organization "that gives marginalized young people, including young people of color, a seat at the table of democracy through electoral action, hands-on education, and civic media programs" – and individual voters Lynn Brindell, Velma Lambert, and Nyota Edjidjimo. (*Id.* ¶¶ 14-17.)  Georgia Shift alleges that it will be forced to divert resources from its activities that "seek to increase voter turnout and organize individuals to build political power," towards "ensuring that voters are able actually to cast a ballot and have it counted, to compensate for Defendants' failures to run and fund a proper election." (*Id.* ¶¶ 24-25.)  Plaintiff Brindell, a Fulton County resident, alleges she was precluded from voting early one afternoon because "***all*** of the voting machines went down" and "was forced to take time of out her day the next day to vote." (*Id.* ¶ 15) (emphasis in original). Plaintiff Lambert, a resident of Gwinnett County, "faced inordinate delays due to long lines and machine malfunctions," resulting in an approximately three-hour wait before she eventually cast her ballot. (*Id.* ¶ 16.)  And Plaintiff Edjidjimo, a

college student in Miami, Florida who attempted to vote absentee in Gwinnett County, never received an absentee ballot despite submitting two absentee ballot applications. (*Id.* ¶ 17.) Plaintiffs allege that Plaintiffs Brindell, Lambert, and Edjidjimo, as well as other Georgia citizens whom Georgia Shift serves, will suffer "serious and irreparable injury in the form of unlawful disenfranchisement in upcoming elections." (*Id.* ¶ 26.)

Plaintiffs assert one cause of action: a violation of the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983. (*Id.* ¶¶ 59-64.) Plaintiffs seek injunctive and declaratory relief, asking the Court to:

(i) "direct Defendants to take all necessary actions in advance of the 2020 elections to protect voters by reforming and improving their election procedures to comply with the Fourteenth Amendment and applicable laws including, but not limited to, publicly announcing the steps taken to provide sufficient resources for the Boards of Elections to properly administer elections in 2020 and beyond, any other such action that may be necessary to not burden voters and their right to vote;" and

(ii) "issue an injunction prohibiting Defendants from conducting or authorizing the conduct of any public election without requiring the BOE Defendants to evaluate and provide enough polling places; examine the number of voting machines needed to avoid delays, including any new machines, and provide enough functioning machines at polling places; evaluate current and

anticipated staffing needs and hire and train sufficient elections staff to prevent voters from having to wait in unreasonably long lines on Election Day 2018, and that will allow elections officials to process all registration forms and absentee ballot applications within one day of receipt. . . ."

(*Id.* at 26-27.)

## II.   ANALYSIS

All Defendants seek dismissal of Plaintiffs' Amended Complaint on three common grounds: lack of standing, Eleventh Amendment immunity, and failure to state a claim.  Gwinnett County raises an additional jurisdictional challenge, asserting that Plaintiffs' claims are not ripe.  Defendants also raise various other grounds for dismissal, which include: Plaintiffs' claims violate principles of federalism (Gwinnett and Fulton County Defendants); Plaintiffs seek an invalid and unenforceable injunction (Cobb and DeKalb County Defendants); the Amended Complaint's failure to establish a constitutional violation (DeKalb and Fulton County Defendants); and other challenges to Plaintiffs' claims for relief pursuant to § 1983.

The Court must first address Defendants' jurisdictional arguments, before considering any merits-based arguments for dismissal.

### **Standing**

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain suit.'" *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S.

490, 499 (1975)); *see also Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir.2005)). Standing has three constitutionally required elements as defined by the United States Supreme Court.

> To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). The requirement that every plaintiff demonstrate standing "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party. Where that need does not exist, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power … away from a democratic form of government." *Summers*, 555 U.S. at 493 (internal citations omitted).

At the pleading stage, the plaintiff is only required to provide "general factual allegations of injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[H]owever, those allegations must nevertheless contain sufficient detail for the Court to determine that plaintiffs 'have made factual averments sufficient, if true, to demonstrate injury in fact.'" *Summers*, 555 U.S. at 493 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) ("extreme generality"

6

of allegations insufficient to demonstrate standing)).  In a case like this one, where a plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, "the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).  In *Summers*, the Supreme Court rejected a standing test that would replace the requirement of "imminent" harm with the requirement of "'a realistic threat' that reoccurrence of the challenged activity would cause [the plaintiff] harm 'in the reasonably near future." *See Summers*, 555 U.S. at 499–500.

An injury-in-fact "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is 'distinct and palpable,' as distinguished from merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal citations omitted).  Allegations of "possible future injury" are not sufficient to satisfy Article III. *Id.* at 158; *see also Lujan*, 504 U.S. at 564 n. 2 (stating that allegations of a future harm at some indefinite time cannot be an "actual or imminent injury"). Instead, "[a] threatened injury must be 'certainly impending,'" *Whitmore*, 495 U.S. at 158, and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2;

*Whitmore*, 495 U.S. at 155 (explaining that the imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms").

This lawsuit is based on allegations that the November 2018 elections in the four major metropolitan Georgia counties were "plagued with problems" that Plaintiffs assume will recur in the 2020 elections. (Am. Compl. at ¶¶ 20, 55-58). Plaintiffs specifically allege constitutional injuries resulting from: (1) a lack of polling places and inadequate staffing, leading to long lines; (2) a lack of functioning voting machines and inadequate supplies; and (3) slow and defective processing of registration and absentee ballot applications. (*Id.* at ¶¶ 17, 23).

Defendants assert that Plaintiffs' asserted injuries and their prospect of redressability are purely speculative and, therefore, they lack standing to bring this action. According to the Fulton County Defendants, Plaintiffs' claims are premised entirely on the *possibility* that the County's failure to provide increased funding and provision of staff and tools might result in burdens to voting. But a generalized fear that injurious activity *might* occur is not sufficiently concrete to confer standing. (Doc. 69-1 at 6) (citing *Clapper*, 568 U.S. at 410 (rejecting "reasonable likelihood" of injury as sufficient to meet the injury in fact standard)).  And the Cobb County Defendants point out that none of the DRE voting machines that plagued the 2018 election will be used in 2020, given the newly procured statewide voting equipment being rolled out for use for all future elections. (Doc. 66-1 at 22).  Thus, according to the Gwinnett County Defendants, Plaintiffs' claims ignore the fact that any harm based on the implementation of a

new voting system is completely speculative, and that they are predicated improperly upon Plaintiffs' mere fears that the same officials will implement the new system in the same way as they contend was inadequate in 2018.[2]  Similarly, the Cobb County Defendants argue that Plaintiffs' entire lawsuit is based on a prediction that the 2020 election will be mismanaged (i.e. long lines, broken machines, delayed processing of absentee ballots). Yet, such predictions about potential future inadequacies does not satisfy the requirement that an injury be "certainly impending" to confer standing.  (Doc. 66-1 at 21 (citing *Summers* and *Clapper*)).

In addition, some Defendants argue that Plaintiffs' injuries are not capable of being redressed by the County and BOE Defendants and that Plaintiffs seek vague and unenforceable injunctive relief.

Plaintiffs allege that absent direction from the Court that Defendants "take all necessary actions in advance of the 2020 elections to protect voters by reforming and improving polling locations, polling machines, and processing and

---

[2] In a separate but related argument, Gwinnett County also asserts that Plaintiffs' claims for relief relating solely to adequate funding and administration of elections are not yet ripe for review by this Court.  (Doc. 67-1 at 10-12.)  This is, in part, because "Gwinnett County has not yet adopted its 2020 budget, but will likely do so in late 2019 or early 2020. This Court's involvement in that process would prevent counties from effectively developing the budgets needed to operate the county. In contrast, a review by this Court of budgets for 2020 for each of the counties after they are adopted would be far more beneficial, because Plaintiffs may conclude that there is no further need for litigation and any required relief could be specifically targeted. This is especially true because Plaintiffs' claim currently 'require[s] speculation about contingent future events'—the county budget and administration processes."  (*Id.* at 12 (quoting *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995))).  And, Gwinnett County contends, "[t]here is still sufficient time before the 2020 elections to determine whether election funding levels are adequate and whether planned administration of the election is adequate, especially given the fact that the rollout of a new voting system is underway." (*Id.* at 11.)

provision of absentee ballots," the individual Plaintiffs will suffer an infringement of their fundamental right to vote and Georgia Shift will suffer the disenfranchisement of its constituents.   (Am. Compl. ¶ 64.)   According to Plaintiffs' prayer for relief, such action should include: (1) directing Defendants to publicly announce the steps taken to provide sufficient resources for the Boards of Elections to properly administer future elections; and (2) prohibiting Defendants from conducting or authorizing any further elections without requiring the BOE Defendants to (a) evaluate and provide enough polling places, (b) examine the number of voting machines needed to avoid delays, including any new machines, and provide enough functioning machines at polling places, (c) evaluate current and anticipated staffing needs and hire and train sufficient elections staff to prevent voters from having to wait in unreasonably long lines on election day, and (d) hire sufficient staff to allow elections officials to process all registration forms and absentee ballot applications within one day of receipt. (Am. Compl. at 26-27.)

In their Motion to Dismiss, the DeKalb County Defendants assert that neither the County nor the BOE have "authority to grant all the types of relief Plaintiffs are seeking"; rather the General Assembly, State Election Board, and Secretary of State are "the actual parties with power to reform and improve the election proceedings or to create time requirements regarding the processing of absentee ballot applications." (Doc. 68 at 18). The Cobb County Defendants contend that an injunction that requires Defendants to take *unspecified*

"necessary actions" in advance of the 2020 elections such as providing "enough" polling places, voting machines, and elections staff "to prevent voters from having to wait in unreasonably long lines" would also violate Rule 65's specificity requirements because the terms of the requested injunction would be ambiguous.

Even assuming (without deciding) that Plaintiffs' asserted injuries, based on sins of the past, are sufficient to satisfy Article III standing, the Court finds that Plaintiffs have failed to adequately allege the injuries are redressable by this Court. This Court cannot guarantee that voters will not have to stand in line or that absentee ballots will not get delayed or lost in the mail. And any injunction that would pretend otherwise and purport to impose obligations on Defendants to take "all necessary action" to ensure against such circumstances would be too amorphous to be capable of enforcement. The Eleventh Circuit has held that where the "inchoate nature" of a claim would provide an "insurmountable obstacle for a court to fashion an injunction that accomplishes anything beyond abstractly commanding the [defendant] to obey [the Constitution]," the plaintiff's putative injury lacks redressability. *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (holding that "promulgating an order in the face of such overwhelming ambiguity would amount to an abdication of our duty to only adjudicate actual cases or controversies. A proper deference to the Constitution's separation of powers means that a court may only reach the merits of those cases that present concrete and immediate injury. It seems to us self-evident that a court would be unable to conduct the First Amendment analysis required without knowing

anything more than vague generalities about future protests" and finding that plaintiffs lacked standing to seek an injunction providing that "the Secret Service shall ensure there's no violation of the First Amendment").

The County Defendants are required under Georgia law to "appropriate annually . . . to the [election] superintendent . . . the funds that it shall deem necessary for the conduct of primaries and elections."   O.C.G.A. § 21-2-71. Similarly, the BOE Defendants are charged under Georgia law with the responsibility of administering the elections, which includes selecting and equipping polling places, hiring and training poll workers, purchasing voting supplies other than voting machines;[3] and processing and implementing voter registration and absentee balloting procedures.   O.C.G.A. §§ 21-2-40; 21-2-70. Plaintiffs request as a remedy an order from this Court requiring the County Defendants to provide all necessary funds to adequately conduct the elections and instructing the BOE Defendants to take all necessary actions to carry out their functions so as not to impinge on voters' federal constitutional rights.   As requested, this relief is nothing more than a request that the Court order the Counties and BOEs to comply with their statutory obligations.[4]   "It is well-established in [the Eleventh] circuit that an injunction demanding that a party do

---

[3] Because Georgia has chosen to adopt a uniform statewide voting system of ballot marking devices for use in all federal and statewide elections, the State is responsible for purchasing the voting machines to be used by counties and municipalities.   The State has contracted to purchase roughly 30,000 new machines for use in the 2020 elections.  Counties have the option to purchase additional voting machines at their own cost.

[4] Plaintiffs request a single element of concrete relief – the imposition of a one-day processing time for registration and absentee ballot applications.  However, Plaintiffs do not point to any authority for this Court to impose such a condition on local election officials, especially considering the Complaint contains an allegation of the experience of only a single voter.

nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir.1999) ("As this injunction would do no more than instruct the City to 'obey the law,' we believe that it would not satisfy the specificity requirements of [Federal Rule of Civil Procedure] 65(d) and that it would be incapable of enforcement.").

Plaintiffs invite the Court to dictate how the Counties should properly administer their elections.  The law does not allow this type of federal judicial oversight except "[w]hen an election process 'reaches the point of patent and fundamental unfairness," that it constitutes a federal constitutional violation. *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183–84 (11th Cir. 2008) (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995) (citing *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986))).  A federal court should not be "the arbiter of disputes" which arise in elections; it is not the federal court's role to "oversee the administrative details of a local election." *Curry v. Baker*, 802 F.2d at 1315.   Rather, the "Constitution leaves to the states broad power to regulate the conduct of federal and state elections." *Duncan, v. Poythress* 657 F.2d 691, 702 (5th Cir. Sept. 28, 1981).[5]

*If,* or *when,* the County elections officials (or the State for that matter) fail to constitutionally carry out their duties to properly conduct and administer the

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

2020 elections, an action can be brought to seek a tailored remedy of an actual injury by affected voters or advocacy groups such as Georgia Shift, as such actions were pursued in *Georgia Muslim Voter Project v. Kemp*, 1:18-cv-4789 (suit seeking temporary restraining order to prevent absentee ballots from being rejected on signature mismatch grounds), *Georgia Coalition for the People's Agenda, Inc. v. Kemp*, 1:18-cv-4727 (successful challenge seeking redress for the alleged violation of rights for 3,141 individual voters flagged by the State as non-citizens of the United States and therefore ineligible to vote in 2018 general election), and *Common Cause v. Kemp*, 18-cv-5102 (action to enjoin State from certifying results of 2018 general election without properly considering status of registered voters who were given provisional ballots).

This Court does not sit as a guarantor of a flawless election. Again, the Court is sensitive to and concerned with the potential for voter disenfranchisement that was felt in 2018. However, Plaintiffs' allegations fail to concretely establish how the Court can effectively redress the asserted injuries.

For these reasons, the Court must conclude that Plaintiffs lack standing and **GRANTS** the Defendants' Motions to Dismiss on that basis. Because the Court has resolved Defendant's Motion on standing, the Court need not address Defendants' other grounds for dismissal.

## III.   CONCLUSION

For the foregoing reasons, the Court must conclude that Plaintiffs' lack standing and **GRANTS** the Defendants' Motions to Dismiss Plaintiffs' Amended

Complaint for declaratory and injunctive relief [Docs. 66, 67, 68, 67] on that basis.   Plaintiffs' Amended Complaint for declaratory and injunctive relief is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

      **IT IS SO ORDERED** this 12th day of February, 2020.

                    **Amy Totenberg**
                    **United States District Judge**